**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| EMPOWER OVERSIGHT ) | |
| WHISTLEBLOWERS & RESEARCH, ) | |
| 601 King Street, Suite 200 ) | |
| Alexandria, VA 22314-3151 ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. _____ |
| v. ) | |
| ) | |
| U.S. DEPARTMENT OF VETERANS AFFAIRS, ) | |
| 810 Vermont Avenue, NW ) | |
| Washington, DC 20420 ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Empower Oversight Whistleblowers & Research brings this civil action against the United States Department of Veterans Affairs for declaratory and injunctive relief under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and alleges:

1.     On August 6, 2021, Empower Oversight submitted a FOIA request to the Department of Veterans Affairs seeking the disclosure and release of agency records that implicate matters of public integrity—i.e., potential ethical issues related to actions taken by senior officials who are responsible for administering veterans' educational benefits, and the Department's subsequent refusal to comply with congressional oversight requests related to these issues.

2.     As explained in more detail below, the Department violated FOIA when it failed to render a timely determination, failed to conduct a search reasonably calculated to lead to the discovery of all responsive records, and when it failed to disclose all responsive, non-exempt

records—and segregable portions of records—under the statute.  Empower Oversight therefore seeks relief from this Court.

## PARTIES

3.    Plaintiff Empower Oversight Whistleblowers & Research is a nonpartisan, nonprofit educational organization dedicated to enhancing independent oversight of government and corporate wrongdoing.  Empower Oversight works to help insiders safely and legally report waste, fraud, abuse, corruption, and misconduct to the proper authorities, and it seeks to hold those authorities accountable to act on such reports by, among other means, publishing information concerning the same.

4.    Defendant United States Department of Veterans Affairs is a government "agency" under 5 U.S.C. § 552(f)(1).  The VA has possession, custody, and control of records requested by Empower Oversight.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

6.    Venue is appropriate under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391.

7.    Assignment to the Alexandria Division is proper under Local Civil Rule 3.

## BACKGROUND

### Senator Grassley's Letter and Underlying Events

8.    In a letter dated April 2, 2021, Senator Charles Grassley, the Ranking Member of the United States Senate Judiciary Committee, asked the Department of Veterans Affairs a series of inquiries related to his concerns of ethical misconduct by officials at the Veterans Benefits Administration (VBA).

9.     Senator Grassley sent his letter to the Department after an incident involving the premature release of market-sensitive information.  Allegedly, Charmain Bogue, while then serving as the Executive Director of the Veterans Benefits Administration's Education Service, failed to recuse herself from VBA activity involving clients of her husband's consulting business.

10.     In March 2020, the Department was preparing to issue a public announcement suspending certain educational institutions from accessing GI Bill benefits.[1]  Department officials warned agency employees before the scheduled release of the public announcement to safeguard sensitive information from the announcement because some of the impacted institutions were operated by publicly traded companies.  Thus, any selective release in advance of the public announcement could lead to insider trading.

11.     Based on the timestamp of the Department's official public announcement, it occurred after the stock market closed on March 9, 2020.  But, by that point, another entity already had issued a press release praising the VA for its announcement.[2]  That entity was Veterans Education Success (VES), a primary client of Ms. Bogue's husband.[3]

12.     This leak appears to have impacted the market by dramatically driving down the stock price of the affected publicly traded corporation.[4]  The select few with prior knowledge of the Department's plan, either on March 9, 2020, or in the weeks and months before that, could

---

[1] The VA later "backed down" from this plan on July 2, 2020. Danielle Douglas-Gabriel, *VA Backs Down From Plan to Suspend University of Phoenix and Other Colleges from Accessing GI Bill Benefits*, Wash. Post (July 2, 2020), available at https://www.washingtonpost.com/education/2020/07/02/va-backs-down-plan-suspend-university-phoenix-other-colleges-accessing-gi-bill-benefits/.

[2] NPLC Staff, *VA Official Charmain Bogue Did Not Disclose Links to Outside Group*, National Legal and Policy Center (Nov. 12, 2020), available at https://www.nlpc.org/government-integrity-project/va-official-charmain-bogue-did-not-disclose-links-to-outside-group/.

[3] NPLC Staff, *Are For-Profit College "Critics" Up to Their Old Tricks?*, National Legal and Policy Center (Nov. 4, 2020), available at https://www.nlpc.org/government-integrity-project/are-for-profit-college-critics-up-to-their-old-tricks/.

[4] The stock price of impacted publicly traded corporation fell from $18.83 to $7.96, a 58-percent loss and over $800 million in market capitalization.  *See* Complaint, *Pomares v. U.S. Dept. of Veterans Affairs*, No. 21CV84HMSB, Dkt. 1 (S.D. Cal. 2021), ¶ 1.

have profited from this information at the expense of retail investors who lacked advanced notice of the Department's impending announcement.

13.     Senator Grassley sent the aforementioned letter to the VA Secretary and Inspector General inquiring about the circumstances surrounding the leak and the broader ethical concerns raised by this incident. *See* Ex. A.  Specifically, Senator Grassley asked whether Ms. Bogue was advised to—and whether she did in fact—recuse herself from activity involving her husband's businesses.  Senator Grassley also asked about Ms. Bogue's boss, Acting Undersecretary of Benefits Thomas Murray, who was responsible for ensuring that Ms. Bogue complied with recusal and other ethical requirements.  Prompted by a series of whistleblower allegations that Mr. Murphy had a history of failing to follow controlling ethical standards, Senator Grassley also asked whether Mr. Murphy ever had been recommended for suspension for accepting prohibited gifts.

14.     The VA Inspector General formally responded to Senator Grassley's letter on May 26, 2021.  Ex. B.  The Inspector General explained that it would investigate the allegations related to Charmain Bogue but would "not be reviewing the other matters raised in [the] letter." *Id.*

15.     The VA Secretary did not respond to Senator Grassley's letter.

16.     Senator Grassley sent another letter dated July 20, 2021, expressing his disappointment that the VA Secretary failed to timely respond to his earlier letter in any meaningful way.  Ex. C.  Senator Grassley also included two follow-up questions generated from information that he had received from other entities.  He requested that the VA answer these new questions by July 30, 2021.

17.     Based on information and belief, the VA Secretary still has not responded substantively to Senator Grassley's inquiries.

<u>Empower Oversight's FOIA Request</u>

18.     About four months after Senator Grassley sent his letters and the Department still withheld a substantive response, Empower Oversight submitted a FOIA request to the agency on August 6, 2021.  The request seeks to shed light on the Department's efforts to answer Senator Grassley's inquiries and on the ethical concerns that he raised.  The request sought "All Records Relating to the Following"—

1.  The Department of Veteran Affairs' receipt of, discussions related to, processing of, and response to Senator Grassley's April 2, 2021 letter to Secretary McDonough and/or his July 20, 2021 letter to Secretary McDonough.

2.  Communications between the Department of Veterans Affairs OIG ("VA OIG") and Department employees relating to the VA OIG's "administrative investigation to evaluate the allegations that Ms. Charmain Bogue, Executive Director of VBA's Education Service, may have violated applicable conflict of interest laws or regulations concerning her official duties and her spouse's business interests."

3.  Internal communications within the Department (other than those with VA OIG), as well as communications between Department employees and any other persons, relating to the VA OIG's investigation.

4.  Any ethics opinion or recusal involving Ms. Bogue, including any related to VES, [Student Veterans of American (SVA)], and any other entities with which her husband had a financial relationship.

5.  Calendar entries and notes of any meetings between Ms. Bogue and VES/SVA representatives, including Barrett Bogue.

6.  The alleged proposal to suspend Thomas Murphy for 10 days, including:

    a.  the February 25, 2019 proposal by Principal Deputy Under Secretary for Benefits Margarita Devlin,

    b.  the March 18, 2019 decision memo by Under Secretary for Benefits Paul Lawrence upholding the proposed suspension;

    c.  the April 30, 2019 decision memo summary for Secretary Wilkie from Assistant Secretary Sitterly, relative to the proposed suspension;

    d.  all communications relating to Assistant Secretary Sitterly's April 30, 2019 decision memo summ[a]ry, including the May 7, 2019 approval thereof; and

    e.  any resulting letter(s) of admonishment.

7.   Communications between Department employees and any Congressional staff, member[s] of the House of Representatives, or Senators, regarding the issues described above.

19.   By email dated August 16, 2021, the VA's Office of Information and Technology acknowledged receipt of the FOIA request and advised Empower Oversight that the information sought by the request "falls under the purview of" the Veterans Benefits Administration, the Office of Assistant Secretary for Congressional & Legislative Affairs, and the Department's Office of Inspector General.  Accordingly, the VA's Office of Information and Technology advised that it had referred the request to those offices for processing and response.

20.   On August 23, 2021, the VA's Office of Information and Technology submitted to Empower Oversight a letter "updat[ing]" Empower Oversight that the records implicated by its request were in the possession of the VA's Office of the Executive Secretary and  the VA's Office of the Inspector General.  The letter indicated that the request was being "redirect[ed]" to those offices "for a file search and a direct response."

<u>Office of the Executive Secretary's Response to the Request</u>

21.   The Office of the Executive Secretary confirmed receipt of the FOIA request by letter dated August 24, 2021.  *See* Ex. D.  That letter also asked Empower Oversight to specify a timeframe in which to search for records related to Item 5 of the request.  *See supra* ¶ 18(5).

22.   The following day, Empower Oversight responded by email providing a timeframe of December 1, 2019, through July 20, 2021.  The Office of the Executive Secretary replied that this clarification sufficed.

23.   On September 7, 2021, the Office of the Executive Secretary issued its first interim decision to the request.  This decision described the searches that had been conducted, the results of those searches, and what was being produced, withheld, or redacted.

24.     On September 9, 2021, the Office of the Executive Secretary then asked Empower Oversight for further clarification regarding Item 5 of the request.  Specifically, the Office requested "the names of the VES/SVA representatives" that Empower Oversight was "requesting aside from Barrett Bogue."  Empower Oversight provided the Office of the Executive Secretary with the names of representatives.

25.     On October 29, 2021, the Office of the Executive Secretary issued its second interim decision.  Like the first interim decision, this decision described the searches that had been conducted pursuant to the request, the results of those searches, and what was being produced, withheld, or redacted.  The second interim decision indicated that a total of 1,426 responsive documents were reviewed; 978 of those were "releasable in their entirety," 290 were "partially releasable" and 158 were being "withheld in full" citing FOIA exemptions under 5 U.S.C. §§ 552(b)(5) (deliberative process exemption); (b)(6) (personal privacy exemption); (b)(7)(E) (law enforcement purpose exemption).  *See* Ex. E.

26.     On December 23, 2021, the Office of the Executive Secretary issued its third interim decision to the request.  This decision took a similar form to the previous two decisions. Specifically, it indicated that a total of 17 responsive records were reviewed, 6 were releasable "in their entirety" and 11 pages were "partially releasable" pursuant to FOIA exemptions 5 and 6.  *See* 5 U.S.C. §§ 552(b)(5), (b)(6).

27.     On January 11, 2022, the Office of the Executive Secretary provided "a status update" regarding the progress of the fourth interim decision via email.  The Office indicated that it had "just finished conduct[ing] the next key term search and ha[d] moved the records over to the review log" to "review for release." Ex. F

28.     On March 10, 2022, the Office of the Executive Secretary again advised Empower Oversight via email regarding the fourth interim decision. That email indicated the fourth interim decision had been submitted "for final review" but that, because the request was one of "Substantial Interest," it "must go through additional review." The Office "did not have an estimated date" for completion of its response to the request. Ex. G.

29.     On April 13, 2021, the Office of the Executive Secretary issued its fourth interim decision to the request. This decision took a similar form to the previous three decisions. Specifically, it indicated that a total of 1,313 responsive records were reviewed, 596 were releasable "in their entirety," 643 pages were "partially releasable," and 74 pages were "withheld in full" pursuant to FOIA exemptions 3, 5, 6, and 7C. *See* 5 U.S.C. §§ 552(b)(3), (b)(5), (b)(6), and (b)(7)(C); Ex. H.

30.     On April 20, 2021, the Office of the Executive Secretary issued its fifth interim decision to the request. This decision took a similar form to the previous four decisions. Specifically, it indicated that a total of 503 responsive records were reviewed, 388 were releasable "in their entirety," 111 pages were "partially releasable," and 4 pages were "withheld in full" pursuant to FOIA exemptions 5, 6, and 7C. *See* 5 U.S.C. §§ 552(b)(5), (b)(6), and (b)(7)(C); Ex. I.

31.     On January 24, 2022, Empower Oversight appealed the Office of the Executive Secretary's second interim decision on the grounds that the documents produced were redacted beyond what is permitted by FOIA exemptions b(5) and b(7)(E). *See* 5 U.S.C. §§ 552(b)(5), (b)(7)(E); Ex. J. The VA acknowledged receipt of this appeal the following day.

32.     With respect to its FOIA exemption 5 claim, Empower Oversight argued that the VA improperly had relied on the deliberative process privilege to redact non-deliberative factual information. As an illustration, Empower Oversight referred to a draft of the VA's response to

Senator Grassley's April 2, 2021, letter, stamped as VA Bates (21-08490-F) 001856 through (21-08490-F) 001864.  *See* Ex K.  The VA's draft is constructed as a two-page cover letter with a seven-page enclosure, entitled "Department of Veterans Affairs (VA) Responses to Questions from Senator Charles Grassley."  *Id.* ((21-08490-F) 001858).  The enclosure recites the text of twelve questions posed by Senator Grassley—several of his questions have subparts—and below each recited question, or subpart of a question, the "VA Response" is set forth.  The text of each of these 24 "VA Response[s]" has been redacted in its entirety, purportedly under FOIA Exemption 5, even though many of Senator Grassley's questions are susceptible only to factual answers that are not subject to change.  For example:

> Question 3:  Had former Principal Undersecretary Jamie Manker ever been recommended for suspension for accepting gifts as prohibited by law?
>
> Question 6:  If the VA is aware that market sensitive information was potentially leaked, has the VA investigated this leak of information?
>
> Question 7:  Did the VA Office of General Counsel ever provide a legal opinion with respect to Mrs. Bogue and her involvement with any of her husband's companies?
>
> Question 10a:  If Mrs. Bogue did report her husband on a public financial disclosure form, did she report Mr. Bogue's employer(s)?  If not, why not?

There is no room for opinions, recommendations, or proposed solutions concerning these and other questions included in Senator Grassely's letter.  Principal Undersecretary Manker was either recommended for suspension, or he was not; the VA was either aware that market sensitive information was leaked or potentially leaked, or it was not; the VA either investigated that leak, or it did not; the VA's Office of General Counsel either provided legal opinions to Ms. Bogue about her financial interest (i.e., her husband's business dealings relative to VA business), or it did not;

and Ms. Bogue either reported her husband's financial interests on her financial disclosure report, or she did not.  The answers to these and many of the other questions in the VA's draft responses are factual, and thus not protected by FOIA exemption b(5).  *See* 5 U.S.C. § 552(b)(5).

33.    On April 18, 2022, the Department issued a decision on Empower Oversight's appeal of the Office of the Executive Secretary's second interim decision. The Department "granted in part and denied in part" the appeal.  Ex. L.  Specifically, the Department granted Empower Oversight's appeal with respect to the Office of the Executive Secretary's assertions of the applicability of FOIA exemption 7E, *see* 5 U.S.C. § 552(b)(7)(E), and denied its appeal with respect to the Office of the Executive Secretary's assertions of the applicability of FOIA exemption 5, *see* 5 U.S.C. § 552(b)(5).  Ex. L.

34.    Addressing Empower Oversight's FOIA exemption 5 claim with respect to the agency's draft letter to Senator Grassley, the VA determined that the "redactions concern draft responses in which agency officials are deliberating on how to respond," and that the responses "do not contain segregable factual information."  Ex. L, at 5–6 (citing *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 465 (D.C. Cir. 2014), and *Skull Valley Band of Goshute Indians v. Kempthorne*, No. 04-339, 2007 U.S. Dist. LEXIS 21079, at *46 (D.D.C. Mar. 26, 2007)).

<u>VA-OIG's Response to the Request</u>

35.    VA-OIG confirmed its receipt of the request on August 23, 2021.

36.    On September 13, 2021, VA-OIG notified Empower Oversight that it was invoking its authority to extend the deadline for rendering a determination under FOIA by an additional ten days where "unusual circumstances" exist.  5 U.S.C. § 552(a)(6)(B)(i).

37.    On September 29, 2021, VA-OIG responded to the request, indicating that it had searched for records responsive to Items 1 and 2 of the request and that it had located 16 pages of

such responsive records. VA-OIG further explained that the records being produced had been redacted under FOIA exemptions b(5) and b(6). *See* 5 U.S.C. §§ 552(b)(5) (deliberative process exemption); (b)(6) (personal privacy exemption).

38.    Upon review of VA-OIG's response, Empower Oversight discovered that all records produced by VA-OIG related exclusively to the first half of Item 1 of the request: VA-OIG's receipt, consideration, and response to Senator Grassley's April 2, 2021 letter. Further, all records produced were communications over the course of only three business days—April 2, 5, and 6, 2021. This was especially surprising given that the "OIG's work" on the investigation was still "in progress" as of May 26, 2021, according to VA-OIG's response letter to Senator Grassley. Moreover, VA-OIG produced *no records* related to the second half of Item 1 (VA-OIG's receipt, consideration, and response to Senator Grassley's July 20, 2021 letter) and *no records* related to Item 2 (communications relating to VA-OIG's investigations into Charmain Bogue). VA-OIG did not indicate that it was withholding any records entirely, and it did not provide an explanation as to why it had not produced records related to these items.

39.    On December 16, 2021, Empower Oversight appealed VA-OIG's September 29 response, raising two separate claims: (1) the adequacy of VA-OIG's search; and (2) VA-OIG's reliance on FOIA Exemptions 5 and 6. Ex. M.

40.    Empower Oversight asserted in its first claim, as to the adequacy of the search, that the limited scope and quantity of documents produced by the agency suggested that VA-OIG either misinterpreted the scope of the request, failed to conduct a search reasonably calculated to uncover all relevant documents, or somehow failed to produce all responsive, non-exempt records located during its search.

41.    As to the second claim, related to the reliance on exemptions, Empower Oversight argued that VA-OIG improperly had relied on FOIA Exemption 5 (deliberative process privilege) to redact non-deliberative factual information.  Empower Oversight reasoned that, because these redactions swept over multi-paragraph text passages in their entirety, at least some of that information must have been non-exempt and segregable from the exempted portions.  As such, Empower Oversight argued that FOIA required VA-OIG to segregate those portions. Addressing Exemption 6 (records that would unreasonably invade personal privacy), Empower Oversight argued that VA-OIG improperly redacted information that was otherwise publicly available.  On this point, Empower Oversight challenged VA-OIG's failure to "balance" the "requester's asserted FOIA public interest in disclosure" against the "privacy interest invoked" by the information "constitute[ing] an unwarranted invasion of personal privacy" as required by law.  Ex. M.

42.    On December 29, 2021, VA-OIG denied Empower Oversight's appeal.  *See* Ex. N. VA-OIG Attorney Christopher Conner claimed that he had "reviewed the FOIA file for the search conducted by VA OIG staff, as well as the records produced in response to" the request.  *Id.* at 3.

43.    As to the first claim in the appeal, Conner determined "that the FOIA staff reasonably interpreted the referred portions of" the request and that the FOIA staff had "conducted an adequate search." Ex. N, at 3.  Yet Conner also conceded that FOIA staff "did not search the working files of the open investigation" into Charmain Bogue.  *Id.*  Conner offered no explanation as to how the search could be reasonable given this acknowledged failure.  Nor did Conner claim that the records included in the investigative file—that FOIA staff admittedly excluded from the search—were eligible for withholding under one or more FOIA exemptions.

44.    As to the second claim in the appeal, Connor determined that VA-OIG "properly withheld" those portions of the redacted records under Exemptions 5 and 6.  Ex. N, at 2.  He did

not, however, address Empower Oversight's argument concerning whether any of the redacted under Exemption 5 were in fact segregable from other exempt portions. Nor did Conner identify— let alone balance—the asserted privacy interests protected by the redacted information against the public interest in disclosure.

VA-OIG'S Report on Charmain Bogue

45.    On March 24, 2022, VA-OIG issued findings from the investigation prompted by Senator Grassley's letter. *See* Dep't of Veterans Affairs Off. Inspector General, VA OIG 21-02076-119, *Former Education Service Executive Violated Ethics Rules and Her Duty to Cooperate Fully with the OIG* (Mar. 24, 2022). The report confirms that Senator Grassley raised well-founded concerns in his letters to the VA. The report also revealed additional (previously undisclosed) ethical misconduct.

46.    Specifically, the report made four main findings:

i.    Ms. Bogue "participated in matters involving her spouse's employer without considering whether it raised an apparent conflict of interest and acted contrary to ethics guidance she received from her supervisors." *See* Report at 3–14.

ii.    Ms. Bogue had interactions with the VES president that violated the apparent conflict rule. *Id.* at 14–19.

iii.    Ms. Bogue provided insufficient detail about her spouse's business in 2019 and 2020 public financial disclosures. *Id.* at 19-21.

iv.    Ms. Bogue "refused to cooperate fully in the OIG's investigation." *Id.* at 3; *see also id.* at 21–22.

47.     The second finding (interactions with VES) uncovered conduct that "raised additional ethics concerns not identified by Senator Grassley's initial referral." *Id.* at 19.

48.     The report also concluded that Ms. Bogue's conduct "implicated" additional charges that OIG "could not substantiate" due to the relevant parties' failure to cooperate in the investigation. *Id.* at 18–19. Ms. Bogue was "noncooperat[ive]" and "nonresponsive" in the interview that she did show up for, and she failed to show up entirely for the follow-up interview necessitated by her noncompliance. *Id.* at 21–22. Mr. Bogue and VES refused to be interviewed altogether. *Id.* at 2.

49.     The OIG report validates Senator Grassley's and Empower Oversight's persistent efforts to obtain information from the VA regarding ethical obligations by agency officials. But the report only scratches the surface in resolving the ethical questions to which the public deserves answers. The report confirms that VA officials have engaged in ethical misconduct in their administration of veterans' benefits. That finding is extremely troubling and makes clear that further transparency is warranted.

## LEGAL STANDARD

50.     FOIA strongly favors openness. "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). As Congress "broadly conceived" the statutory purpose, *EPA v. Mink*, 410 U.S. 73, 79–80 (1973), "disclosure, not secrecy, is the dominant objective of the Act," *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976).

51.     "FOIA provides that, subject to certain statutory exemptions, federal agencies shall 'upon any request for records which reasonably describe such records . . . make the records

promptly available to any person.'" *Hanson v. U.S. Agency for Int'l Dev.*, 372 F.3d 286, 290 (4th Cir. 2004) (quoting 5 U.S.C. § 552(a)(3)(A)).

52.    FOIA requires that an agency respond to a valid request within twenty days (exempting Saturdays, Sundays, and legal public holidays) upon receipt of such request, including notifying the requestor immediately of its determination, the reasons therefor, and the right to appeal any adverse determination.  5 U.S.C. § 552(a)(6)(A)(i).

53.    In certain circumstances, an agency may provide notice to the requester that "unusual circumstances" merit additional time—up to an additional ten working days—to respond to the request.  *Id.* § 552(a)(4)(viii)(II)(aa).  "Unusual circumstances" include, among other things, "the need for consultation" "with another agency" or "among two or more components of the agency" "having a substantial interest" in the determination of the request.  *Id.* § 552(a)(6)(B)(iii)(III).  In the event that an agency provides notice to the requester of "unusual circumstances," and it is unable to respond to the request within the statutory deadline, the agency must provide the requester "an opportunity to arrange with the agency an alternative time frame for processing the request."  *Id.* § 552(a)(6)(B)(ii).

54.    If an agency does not respond to a request within the statutory timeline after the agency's "determination" to "comply with a request for records," the requester is deemed to have exhausted administrative remedies and immediately may pursue judicial review.  *Id.* § 552(a)(6)(C)(i); *see also Nat'l Day Laborer Organizing Network v. U.S. Immigration and Customs Enforcement*, 236 F. Supp. 3d 810, 814 (S.D.N.Y. 2017).  An agency may not eschew this exhaustion rule by simply deciding "to later decide."  *Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180, 186 (D.C. Cir. 2013) (*CREW*).  The agency instead must "at least inform the requester of the scope of the documents that the agency will

produce, as well as the scope of the documents that the agency plans to withhold under any FOIA exemptions." *Id.*; *accord Our Children's Earth Foundation v. Nat'l Marine Fisheries Service*, 85 F. Supp. 3d 1074, 1089–91 (N.D. Cal. 2015).

55.     The agency is not required to produce its responsive, non-exempt records within the 20- or 30-day statutory time limit but must make such records "promptly available" "upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees, (if any) and procedures to be followed." 5 U.S.C. § 552(a)(3)(A).  An agency's "determination" "to comply with a request for records" will also trigger its duty to make such responsive records "promptly available." *Id.* § 552(a)(6)(C)(i).

56.     Although FOIA does not assign a particular timeframe for an agency to comply with its requirement to make documents "promptly available," the D.C. Circuit has concluded that "depending on the circumstances," this requirement "typically would mean within days or a few weeks of a 'determination,' not months or years. *CREW*, 711 F.3d at 188.

57.     An agency responding to a valid request for records "shall make reasonable efforts to search for [such] records." 5 U.S.C. § 552(a)(3)(C).  An agency's search is "adequate" if it "has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg v. DOJ.*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).  The agency must conduct a "search reasonably calculated to uncover all relevant documents." *Ethyl Corp. v. EPA*, 25 F.3d 1241, 1248 (4th Cir. 1994).

58.     A person's access to official records under FOIA "does not apply to matters" that fall within the discrete categories of exemptions identified by the statute. *See* 5 U.S.C. § 552(b).

59.     Two exemptions are relevant here:

        i.  FOIA exempts "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation

with the agency," except where such records were "created 25 years or more before the date on which the records were requested." 5 U.S.C. § 552(b)(5).

ii.  FOIA exempts the disclosure of files that "would constitute a clearly unwarranted invasion of personal privacy," such as "personnel and medical files." *Id.* § 552(b)(6).

60.  Even if portions of responsive documents are covered by FOIA's exemptions, the statute requires that agencies must provide the reasonably segregable portions of those records not subject to a FOIA exemption.  5 U.S.C. § 552(a)(3)(B).

61.  Upon receipt of an appeal, the agency must "make" its "determination with respect to [the] appeal within twenty days (excepting Saturdays, Sundays, and legal public holidays)." *Id.* § 552(a)(6)(A)(ii).

## CLAIMS FOR RELIEF

### Count I

**The VA Failed to Promptly Produce Responsive Records in Violation of FOIA,
5 U.S.C. §§ 552(a)(3)(A) and (a)(6)(C)(i).**

62.  Plaintiff realleges and incorporates by reference each of the foregoing allegations contained in paragraphs 1 through 61 as if fully set forth herein.

63.  FOIA requires Defendant to process records requests and promptly provide the requested records or the reasonably segregable portions of records not subject to a FOIA exemption. *See* 5 U.S.C. § 552(a)(3)(B).

64.  More than three months passed between the VA advising Empower Oversight that, in connection with its fourth interim agency decision, it had "finished conduct[ing] the next key term search" and that it "ha[d] moved the records over to the review log" for "review," and the

Department ultimately producing responsive, non-exempt records to Empower Oversight. *Compare* Ex. F, *with* Ex. H.

65.    After nearly two months had passed, the VA advised Empower Oversight that its fourth interim decision had been "submitted" "for final review," but the agency indicated that, because the request was considered "Substantial Interest," it "must go through additional review" —the VA "d[id] not have an estimated date" for completion.  Ex. G.  This email appears to indicate that the agency considered the request to implicate "unusual circumstances" under the statute, thus allowing it to invoke up to ten additional days to make its determination.  But the VA did not state as much, nor did it cite this statutory provision, or otherwise explain its reasoning or the implications attending such a determination.   In any event, the VA's formulation remains perplexing, as the statute's maximum 30-day time limit permitted by such "unusual circumstances" had long since passed.

66.    The VA's production of responsive, non-exempt records does not quality as "prompt" under FOIA Sections 552(a)(3)(A) and 552(a)(6)(C)(i).

**Count II**

**The VA Failed to Render a Decision on Empower Oversight's Appeal Within 20 Business Days, in Violation of FOIA, 5 U.S.C. § 552(a)(3)(C).**

67.    Plaintiff realleges and incorporates by reference each of the foregoing allegations contained in paragraphs 1 through 61, as if fully set forth herein.

68.    Empower Oversight appealed the VA's second interim decision on January 24, 2022, and the VA acknowledge receipt of this appeal on January 25, 2022.

69.    According to FOIA's requirement that an agency "make" its "determination with respect to [the] appeal within twenty [working] days," *see* § 552(a)(6)(A)(ii), the VA was required to decide that appeal by February 21, 2022.

70.     The Department's response to Empower Oversight's appeal is dated April 18, 2022.

Ex. J.  The VA thus violated FOIA's time limit for responding to an appeal.

## Count III

### The VA Failed to Conduct a Search Reasonably Calculated to Lead to the Discovery of All Responsive Records in Violation of FOIA, 5 U.S.C. § 552(a)(6).

71.     Plaintiff realleges and incorporates by reference each of the foregoing allegations contained in paragraphs 1 through 61, as if fully set forth herein.

72.     FOIA requires the VA to conduct a search for records that is "reasonably calculated to uncover all relevant documents." *Weisberg*, 705 F.2d at 1351.

73.     Despite the scope of the first and second items of the request, staff at VA-OIG claimed to have located only sixteen pages of responsive records, and those records relate exclusively to VA-OIG's receipt, consideration, and response to Senator Grassley's April 2, 2021, letter to the VA, which represents *only the first half* of the first item of Empower Oversight's request.

74.     VA-OIG's response to Empower Oversight's appeal further confirmed that VA-OIG's search was inadequate.  On its own terms, that response conceded that FOIA staff "did not search the working files of the open investigation" into Charmain Bogue, which would have been responsive to the second item of the request.  VA offered no justification as to how its search could be "reasonable" given this acknowledged failure.

75.     Moreover, even though VA-OIG's response to the appeal reflected that it had failed to conduct an adequate search, it did not subsequently remedy that failure.

**Count IV**

**The VA Took Inappropriate Liberties with Respect to Redactions that It Made on the Records It Produced in Response to Empower Oversight's FOIA Request, in Violation of FOIA, 5 U.S.C. § 552(a)(3)(B).**

76.     Plaintiff realleges and incorporates by reference each of the foregoing allegations contained in paragraphs 1 through 61, as if fully set forth herein.

77.     VA's second interim decision indicated that, of the 1,426 pages of responsive records located, the agency would partially release only 290 pages and withhold in full 158 pages, citing Exemption 5's "pre-decisional and/or deliberative process" privilege, Exemption 6, and Exemption 7(E).

78.     VA-OIG's response to the request similarly redacted records in reliance on Exemptions 5 and 6.

79.     Exemption b(5) provides that a person's access to official records under FOIA "does not apply to matters that are" normally privileged in the civil discovery context, such as deliberative process materials, as the VA has claimed here.  5 U.S.C. § 552(b)(5); s*ee also NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *Martin v. Office of Special Counsel.*, 819 F.2d 1181, 1184 (D.C. Cir. 1987).  An agency's use of the "draft" label is not determinative; courts still must consider whether the document expresses agency "opinions that were subject to change." *U.S. Fish & Wildlife Service v. Sierra Club*, 141 S.Ct. 777, 786 (2021).

80.     Records covered by this privilege under Exemption b(5) will reflect the "deliberative process that precedes most decisions of government agencies." *Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1047 (D.C. Cir. 1982).  But this privilege *does not cover* "factual information contained in [such] document[s]."  *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 867 (D.C. Cir. 1980).  An agency "must disclose those portions of predecisional and deliberative documents that contain factual information that does not inevitably reveal the

government's deliberations." *Public Citizen, Inc. v. Office of Mgmt. & Budget*, 598 F.3d 865, 877 (D.C. Cir. 2010) (internal quotation marks omitted); *accord Reporters Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 366–67 (D.C. Cir. 2021).

81.     Upon information and belief, the redacted portions for which VA's Office of the Executive Secretary and VA-OIG invoked Exemption b(5)'s coverage of "pre-decisional and/or deliberative process" records contained *factual information* that would not expose the deliberations or opinions of agency personnel.

82.     As such, the Office of the Executive Secretary and VA-OIG were required to segregate those non-deliberative factual portions of the documents under 5 U.S.C. § 552(a)(3)(B).

83.     VA-OIG also improperly relied upon Exemption 6 to redact records.  Exemption 6 protects information that "would constitute a clearly unwarranted invasion of personal privacy" if disclosed.  *Id.* § 552(b)(6).

84.     VA-OIG relied on Exemption 6 to redact the names, titles, official email addresses, and other position information of government officials.  Disclosure of this information is far from an invasion of personal privacy—it is openly available to the public.  *See* 5 C.F.R. § 293.311(a).

85.     Nonetheless, asserting Exemptions b(5) and b(6), the VA redacted factual information, names, and other information—which does not invoke a sufficient personal privacy interest— from the records that it produced in response to Empower Oversight's FOIA request.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff prays that this Court:

A.     Declare that the VA failed to promptly produce responsive records to the request in violation of FOIA, 5 U.S.C. §§ 552(a)(3)(A) and (a)(6)(C)(i).

B.     Declare that the VA failed to render a decision on Empower Oversight's appeal within 20 business days, in violation of FOIA, 5 U.S.C. § 552(a)(3)(C).

C.      Declare that the VA failed to conduct a search reasonably calculated to lead to the discovery of all responsive records in violation of FOIA, 5 U.S.C. § 552(a)(6).

D.      Declare that the VA took inappropriate liberties with respect to redactions that it made on the records it produced in response to the request, in Violation of 5 U.S.C. § 552(a)(3)(B).

E.      Order the VA to immediately conduct a reasonable search for all records responsive to the request, as required by FOIA, 5 U.S.C. § 552(a)(3)(C).

D.      Order the VA to immediately provide determinations on the request, as required by FOIA, 5 U.S.C. § 552(a)(6)(A)(i).

E.      Order the VA to promptly disclose to Empower Oversight all responsive, non-exempt records for the request, as required by FOIA, 5 U.S.C. § 552(a)(3).

F.      Award Empower Oversight its costs and reasonable attorneys' fees incurred in this action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

G.      Grant such other relief as the Court may deem just and proper.

May 16, 2022                                    Respectfully submitted,

                                                /s/ Jeffrey S. Beelaert
                                                Jeffrey S. Beelaert (VSB No. 81852)
                                                STEIN MITCHELL BEATO & MISSNER LLP
                                                901 15th Street NW, Suite 700
                                                Washington, DC 20005
                                                Tel: (202) 661-0923
                                                Fax: (202) 296-8312
                                                Email: jbeelaert@steinmitchell.com

                                                *Attorney for Plaintiff Empower Oversight*
                                                *Whistleblowers & Research*