IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| EMPOWER OVERSIGHT WHISTLEBLOWERS & RESEARCH, | |
| Plaintiff, | No. 1:22-cv-00559-MSN-JFA |
| v. | |
| U.S. DEPARTMENT OF VETERANS AFFAIRS, | |
| Defendant. | |

**MEMORANDUM OPINION**

This matter comes before the Court on Defendant U.S. Department of Veterans Affairs' ("VA") Motion for Summary Judgment (ECF 26). The motion has been fully briefed, and the Court finds that oral argument will not materially aid the decisional process. Upon consideration of the pleadings and for the reasons set forth below, the Court will **GRANT** Defendant's motion.

## I.    PROCEDURAL HISTORY

On August 6, 2021, Empower Oversight Whistleblowers & Research ("Plaintiff" or "Empower") submitted a records request ("Request") to the U.S. Department of Veterans Affairs ("Defendant" or "VA") under the Freedom of Information Act ("FOIA") pursuant to 5 U.S.C. § 552. *See generally* ECF 24 ("Compl.") ¶ 1. On August 16, 2021, the VA's Office of Information and Technology acknowledged receipt of Empower's FOIA request and advised them that the information sought fell under the purview of the Veterans Benefits Administration ("VBA"); the Office of Assistant Secretary for Congressional & Legislative Affairs ("OCLA"); and the Veterans Affairs Office of Inspector General ("OIG"), and accordingly, it referred their request to those offices for processing. *Id.* ¶ 20.

1

The VA's Office of the Executive Secretary ("OSVA") issued a total of five interim agency decisions in response to Empower's Request between September 7, 2021 and April 20, 2022. *Id*. ¶¶ 26, 28-30, 33. Empower filed an administrative appeal with the VA as to OSVA's second, fourth, and fifth interim decisions. *Id*. ¶¶ 34, 38, 42. Shortly after OSVA's issuance of its fifth interim decision, Empower filed an initial complaint seeking declaratory and injunctive relief on May 16, 2022. On July 21, 2022, Defendant moved to stay the litigation pending the resolution of the fourth and fifth appeals. ECF 20 ("Def. Consent Mot. to Stay the Proceedings"). The next day, the Court issued an order granting Defendant's motion to stay. ECF 21.

On September 22, 2022, Empower filed an Amended Complaint (ECF24), which Defendant answered on October 6, 2022. ECF 25 ("Answer"). On November 3, 2022, the VA subsequently moved for entry of summary judgment as to all claims. (ECF 26-27) ("Mot. for Summ. J."). Empower filed a response on November 17, 2022, (ECF 30) ("Opp."), and Defendant filed a reply on November 23, 2022. ECF 31 ("Reply").

## II.    BACKGROUND[1]

On April 2, 2021, Senator Chuck Grassley ("Sen. Grassley") sent a letter to VA Secretary Denis McDonough ("Secretary McDonough") seeking information about allegations of unethical conduct by officials within the Veterans Benefits Administration ("VBA"), including an alleged conflict of interest by the Executive Director of the VBA's Education Service, Charmain Bogue ("Ms. Bogue"). Def. Statement of Undisputed Facts, ECF 27 ("Def. SUF") ¶ I. That same day, Sen. Grassley also sent a separate letter to VA Inspector General Michael Missal asking him to investigate the allegations regarding Ms. Bogue. *Id.* On July 20, 2021, Sen. Grassley sent a second letter to Secretary McDonough reiterating his request for information. *Id*.

---

[1] The following facts are undisputed unless otherwise indicated.

On August 6, 2021, Empower Oversight submitted a seven-part FOIA request seeking information regarding the VA's responses to Sen. Grassley's letters. *Id.* ¶ II. 1. The Request sought all records related to the following items:

1. The Department of Veterans Affairs' receipt of discussions related to, processing of, and response to Sen. Grassley's April 2, 2021 and July 20, 2021 letters to Secretary McDonough.

2. Communications between the VA OIG and Department employees relating to the VA OIG's "administrative investigation to evaluate the allegations that Ms. Charmain Bogue, Executive Director of VBA's Education Service, may have violated applicable conflict of interest laws or regulations concerning her official duties and her spouse's business interests."

3. Internal communications within the Department (other than with VA OIG), as well as communications between Department employees and any other persons, relating to the VA OIG's investigation referenced above.

4. Any ethics opinions or recusal involving Ms. Bogue, including any related to Veterans Education Success ("VES"), Student Veterans of America ("SVA"), and any other entities with which her husband had a financial relationship.

5. Calendar entries and notes of any meetings between Ms. Bogue and VES/SVA representatives, including Barrett Bogue.[2]

6. The alleged proposal to suspend Thomas Murphy[3] for 10 days, including:

   a. The February 25, 2019 proposal by Principal Under Secretary for Benefits Margarita Devlin;

   b. The March 18, 2019 decision memo by Under Secretary for Benefits Paul Lawrence upholding the proposed suspension;

   c. The April 30, 2019 decision memo summary for Secretary Wilkie from Assistant Secretary Sitterly, relative to the proposed suspension;

   d. All communications relating to Assistant Secretary Sitterly's April 30, 2019 decision memo summary, including the May 7, 2019 approval thereof; and

   e. Any resulting letter(s) of admonishment.

---

[2] Barett Bogue is Ms. Bogue's husband. *See* Compl ¶ 35.
[3] At the time of Sen. Grassley's April 2021 letter to the VA, Thomas Murphy was "serving as Acting Undersecretary of Benefits." ECF 24-A at 2.

7. Communications between Department employees and any Congressional staff, member of the House of Representatives, or Senators, regarding the issues described above. *Id.* ¶ II. 1. 1-7.

On August 16, 2021, the VA FOIA Service assigned the Request tracking number (21-8490-F) upon entrance into its electronic response management system. *Id*. ¶ 2. On August 23, 2021, the VA FOIA service then referred the Request to the OSVA and the OIG. *Id.*

## A. Office of the Secretary ("OSVA") Search for Documents

On August 24, 2021, Ruthann Parise, OSVA's FOIA Officer, conducted two searches of Secretary McDonough and Chief of Staff Tanya Bradsher's email boxes, with terms "Bogue," "Grassley," "21-05571-F," or "04890714."[4] *Id*. ¶ 3. Two days later, Ms. Parise asked the VA's Office of Information & Technology ("OI&T") to search twenty email boxes of VA employees from various VA directorates, including the VA Secretary, his Chief of Staff, the Executive Secretary, and the responsible Executive Writer.[5] *Id*. ¶ 4. Specifically, Ms. Parise requested emails for the period between April 2, 2021 through August 6, 2021.[6] *Id*.

With respect to item 6 of the Request, Ms. Parise collected the records relating to Mr. Murphy that she had previously processed in response to Sen. Grassley's letter. *Id*. ¶ 7. Specifically, Ms. Parise asked the VBA Central Office and the VA's Office of General Counsel ("OGC") to search for any resulting letter of admonishment including a search in Mr. Murphy's electronic personnel file, which prompted the OGC to request that the VA Corporate Senior

---

[4] Ms. Parise employed the number "21-05571-F" because that number had been assigned to the records that had been uploaded to FOIAXpress, an electronic FOIA response management system, for processing before release to Sen. Grassley in response to his letter to Secretary McDonough. Similarly, the number "04890714" was chosen because this was the number assigned to Sen. Grassley's letter to Secretary McDonough in the VA Integrated Enterprise Workflow Solution ("VIEWS") system. Def. SUF ¶¶ 5-6.

[5] The Executive Writer at the VA is "responsible for drafting and monitoring congressional correspondence." Def. SUF ¶ 4.

[6] April 2, 2021 was the date of Sen. Grassley's first letter to Secretary McDonough and August 6, 2021 was the date of Empower's Request. Def. SUF ¶ 4.

Executive Management Office conduct the same search. *Id*. All three offices informed Ms. Parise that no letter of admonishment had been located. *Id*.

On September 9, 2021, Ms. Parise informed Empower that the email files contained more than forty gigabytes of data. *Id*. ¶ 8. That same day, she also requested that Empower provide the names of the VES/SVA representatives other than Barrett Bogue sought in item 5 of its Request. On September 30, 2021, Empower responded with a list of fifteen additional names of SVA/VES representatives regarding item 5. *Id*. On October 5, 2021, Ms. Parise further requested that OI&T search for the key terms Empower had identified in its September 30, 2021 response regarding item 5. *Id*. ¶ 9. Approximately six months later, on April 6, 2022, Ms. Parise conducted key term searches within Ms. Bogue's daily calendars with the key terms provided by Empower including: 16 individuals' names, "VES," "SVA," "Veterans Education Success," and "Student Veterans of America." *Id*. The following day, she conducted the same searches on Ms. Bogue's calendar invitations, notes, and attachments. *Id*.

### B. OSVA's Document Releases and Exemptions

Ms. Parise released responsive records on a rolling basis between September 7, 2021 and April 20, 2022, as those documents were uncovered. *Id*. ¶ 10. On September 7, 2021, she issued OSVA's first interim agency decision ("IAD").[7] On October 29, 2021, Ms. Parise issued OSVA's second IAD. *Id*. ¶ 11. The second IAD excluded pages withheld in full citing to FOIA Exemptions 5, 6, and 7(E) pursuant to U.S.C. § 552(b)(5), (b)(6), (b)(7)(E).[8] *Id*. Empower appealed OSVA's invocation of Exemptions 5 and 7(E) in the second IAD.[9] *Id*. ¶ 12. On April 18, 2022, the OGC

---

[7] The parties have agreed that the first IAD is not at issue in this litigation. Def. SUF ¶ 10.
[8] U.S.C. § 552(b)(5) relates to the deliberative process exemption; (b)(6) invokes the personal privacy exemption; and (b)(7)(E) invokes the law enforcement purpose exemption.
[9] Empower did not appeal OSVA's invocation of Exemption 6. Def. SUF ¶ 11.

granted the appeal with respect to the redactions made under Exemption 7(E) and denied the appeal with respect to the Exemption 5 redactions. *Id.*

On December 23, 2021, Ms. Parise issued OSVA's third IAD.[10] *Id.* ¶ 13. On April 13, 2022, after extensive consultations with multiple VA components including OIG, Ms. Parise issued OSVA's fourth IAD. *Id.* ¶ 14. This IAD included 596 pages released in their entirety, 643 pages released in part, and 74 pages withheld in full. *Id.* The withholdings were made pursuant to FOIA exemptions 3, 5, 6, and 7(C). *Id.* Empower only appealed OSVA's invocation of Exemption 5 redactions in the fourth IAD. *Id.* ¶ 15. On August 4, 2022, OGC granted Empower's appeal in part and produced an additional 30 pages with the Exemption 5 redactions removed. *Id.*

On April 20, 2022, OSVA issued its fifth and final IAD, which included 388 pages in their entirety, 111 pages in part, and four pages were withheld in full. *Id.* ¶ 16. The excluded material was withheld pursuant to FOIA Exemptions 5, 6, and 7(C). *Id.* Empower only appealed OSVA's invocation of Exemption 6 redactions as well as the search that produced the records released in the fifth IAD. *Id.* ¶ 17. Empower asserted that OSVA "should have conducted a search of VIEWS[11] as well as records responsive to a previous FOIA request that [it] had identified in a released document." *Id.* OGC granted Empower's appeal in part and produced two additional pages of records with the Exemption 6 redactions removed and further released 57 pages of VIEWS records with redactions made pursuant to Exemptions 5 and 6. *Id.* Additionally, OGC provided a link to view the records related to the previous FOIA request identified by Empower. *Id.*

### C. Office of the Inspector General's ("OIG") Search for Documents

---

[10] The parties have agreed that the third IAD is not at issue in this litigation. Def. SUF ¶ 13.
[11] VIEWS is the system of records OSVA uses for congressional correspondence. Moreover, access to VIEWS is limited to certain VA employees who have tasks related to VIEWS cases and who can upload document attachments and leave comments within the system. Def. SUF ¶ 6.

Upon receipt of Empower's Request on August 16, 2021,[12] "OIG interpreted only item 2 of the [R]equest as referring to OIG records." *Id.* ¶ 19. OIG arrived at this conclusion, "because item 1 of the Request referred to a letter Senator Grassley had sent to the VA Secretary, not to the separate letter sent to the Inspector General . . . ." *Id.* Such Request "did not seek records related to the receipt and processing of the letter sent to the Inspector General." *Id.* On August 23, 2021, OIG sent Empower a letter acknowledging receipt of the Request. *Id.* ¶ 20. The search for this Request returned more than 4,700 records, which OIG "reviewed individually to determine whether they were responsive to item 2 of the Request." *Id.* ¶ 22.

On October 1, 2021, OIG released sixteen pages of responsive records, which were redacted in part pursuant to FOIA Exemptions 5 and 6. *Id.* ¶ 23. Empower appealed OIG's decision, which OIG subsequently denied in December 2021. *Id.* ¶ 24. After the instant action was filed and "in the spirit of compromise during litigation and in light of the completion of OIG's investigation into Ms. Bogue," OIG "searched the investigator's email in June 2022, using the same date range and search terms as in the first search" and concluded that 103 pages were responsive to item 2 of Empower's Request. *Id.* ¶¶ 25-26.

## III.    LEGAL STANDARD

Summary judgment is proper where, viewing the facts in the light most favorable to the non-moving party, there remains no genuine issue of material fact. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "A material fact is one 'that might affect the outcome of the suit under the governing law.'" *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2011) (quoting *Anderson*, 477 U.S. at 248). The movant bears the burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp v. Carrett*, 477 U.S.

---

[12] OIG assigned the Request a tracking number of 21-00357-FOIA. Def. SUF ¶ 19.

317, 327 (1986). If the movant has met that burden, the non-moving party must demonstrate that such an issue of fact exists. *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 584–86 (1986). The court "resolve[s] all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion" when considering the motion. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (cleaned up).

A party opposing summary judgment must respond to the statement of undisputed material facts either by (1) citing particular parts of materials in the record on which the party relies to establish that a fact is genuinely disputed, Fed. R. Civ. P. 56(c)(1)(A), or (2) "showing that the materials cited do not establish the absence . . . of a genuine dispute, or that the [moving party] cannot produce admissible evidence to support the fact," Fed. R. Civ. P. 56(c)(1)(B). If "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," a court may "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e); *see also* Local R. 56(B) (a party responding to a statement of undisputed facts in moving party's brief must "cit[e] the parts of the record relied on to support the facts alleged to be in dispute" and the "Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion").

## IV.   ANALYSIS

The factual record demonstrates that there is no genuine issue of material fact in dispute, and summary judgment should be granted in favor of Defendant on the following claims: (1) failing to promptly produce responsive records in violation of FOIA, 5 U.S.C. §§ 552(a)(3)(A) and (a)(6)(C)(i) (Count I); (2) failing to promptly render a decision on Empower's administrative

appeal within twenty business days in violation of FOIA, 5 U.S.C. § 552(a)(3)(C) (Count II); (3) failing to conduct a search reasonably calculated to lead to the discovery of all responsive records in violation of FOIA, 5 U.S.C. § 552(a)(6) (Count III); and (4) inappropriately redacting records that it produced in response to Empower's Request in violation of FOIA, 5 U.S.C. § 552(a)(3)(B) (Count IV). Compl. at 24-27.

## A. Untimeliness of VA's Records Production

Regarding the timeliness of the VA's production of records, it is undisputed that more than three months passed between the time the VA advised Empower that in connection with its fourth IAD, the FOIA Officer had "moved the records over to the review log" for potential release[13] and OSVA's eventual production of responsive, non-exempt records on April 13, 2022. Pl. Statement of Undisputed Facts, ECF 27, ("Pl. SUF") ¶ 1. It is also undisputed that the VA failed to comply with the statutory deadline of twenty business days[14] to decide Empower's administrative appeal of the second IAD filed on January 24, 2022.[15] *Id.* ¶ 2.

Timeliness claims pursuant to 5 U.S.C. § 552 (a)(6)(A) are moot "[o]nce an agency has made its final determination under [it]." *Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 296-97 (D.D.C. 2013). Accordingly, courts have held that declaratory judgment regarding an agency's failure to comply with FOIA's timing requirements is inappropriate when an agency has already made a final determination. *Sabra v. United States Customs & Border Prot.*, 2021 WL 796166, at *4 (D.D.C. Mar. 2, 2021). When agencies do not adhere to FOIA's timelines, the penalty is "that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting

---

[13] This communication was transmitted on January 11, 2022. Pl. SUF ¶ 1.
[14] An agency shall "make a determination with respect to any appeal within twenty days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of such appeal." 5 U.S.C. § 552(a)(6)(A)(ii).
[15] The VA issued its decision regarding Empower's appeal of the second IAD on April 18, 2022. Pl. SUF ¶ 2.

into court." *Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180, 189 (D.C. Cir. 2013).

Empower, however, contends that in the context of a timeliness claim, judicial relief is not limited "only to an order requiring the agency to produce documents after it has failed to comply with statutory deadlines." Opp. at 10. When an agency fails to comply with the statutory deadlines, Empower argues, "the Court may acknowledge that failure, and it may award fees and costs when doing so will encourage fulfillment of the purposes of FOIA." *Id.* at 12. Empower further asserts that the Court "has a judicial function to perform because the VA has not surrendered 'all requested records.'" *Id.* (quoting *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982)). In essence, Empower maintains that its timeliness claims are not moot because there are still live controversies with respect to the adequacy of the search and the use of redactions. *See* Opp. at 10-12.

In this case, the adequacy of the search and the propriety of the redactions are irrelevant to Empower's timeliness claims. The relevant inquiry in a timeliness claim is "whether the [VA]'s determination was *final*." *Empower Oversight Whistleblowers & Rsch. v. United States Sec. & Exch. Comm'n*, 2023 WL 4353148, at *7 (E.D. Va. July 5, 2023) (emphasis in the original). By deciding Empower's appeal, Defendant made its final determinations for the second and fourth IADs on April 18, 2022 and August 4, 2022, respectively. Def. SUF ¶¶ 12, 15.

Moreover, "FOIA does not create a cause of action for an agency's untimely response to a FOIA request." *Ocasio v. U.S. Dep't of Just.*, 70 F. Supp. 3d 469, 476 (D.D.C. 2014). Courts have found declaratory relief improper in FOIA cases even when an agency has failed to respond to an appeal at all. *Inst. for Pol'y Stud. v. C.I.A.*, 885 F. Supp. 2d 120, 153 (D.D.C. 2012) ("In light of the remedy of initiating a cause of action within federal court provided by FOIA, this Court finds that a declaratory judgment for the plaintiff on this point is improper."). Defendant concedes,

however, that there is an exception to the mootness rule which "involves the narrow set of circumstances where an agency has adopted a policy that violates the FOIA[.]" *Justice v. Mine Safety & Health Admin.*, 2015 WL 4621543, at \*4 (S.D.W. Va. July 31, 2015). Under a "policy or practice claim," a plaintiff must allege "that an agency policy or practice will impair the party's lawful access to information in the future." *Thompson v. U.S. Just. Dep't*, 2021 WL 6332676, at \*17 (E.D. Va. Mar. 29, 2021), *aff'd*, 2022 WL 1797324 (4th Cir. June 2, 2022) (internal quotation marks omitted).

Here, Empower has not raised a "policy or practice" claim in its complaint and cannot do so by averring that it intends to continue submitting FOIA requests. *See* Opp. at 13 ("Consistent with its mission, Empower Oversight continues to submit FOIA requests designed to educate the public and to enhance independent oversight of the VA through transparency."). Therefore, the Court finds that Empower's claims regarding timeliness are moot. FOIA recognizes no right to declaratory relief or attorneys' fees under a theory of timeliness. Accordingly, the Court grants summary judgment to Defendant on Counts I and II.

### B. Adequacy of the Search

Under FOIA, the adequacy of the search is "determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003). In other words, a search must be "reasonably calculated to uncover all relevant documents." *Rein v. U.S. Patent & Trademark Office*, 553 F.3d 353, 362 (4th Cir. 2009). This, however, "does not require that an agency search every file where a document could possibly exist[.]" *Id.* at 364. Adequacy is measured "by the reasonableness of the effort in light of the specific request." *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986).

Moreover, courts have found that agencies are either required to perform the search or "explain why such a search was not required under FOIA." *Houghton v. U.S. Dep't of State*, 875 F. Supp. 2d 22, 30 (D.D.C. 2012). Agencies may not demonstrate the adequacy of its search by relying "on an affidavit that simply avers that the search was conducted in a manner consistent with customary practice and established procedure." *Ethyl Corp. v. U.S. E.P.A.*, 25 F.3d 1241, 1247 (4th Cir. 1994) (internal quotation marks omitted). The affidavit must be "reasonably detailed, setting for the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched . . . ." *Id.* Courts are entitled to presume the credibility of these affidavits "so long as it has no reason to question the good faith of the agency." *Spannaus v. DOJ*, 813 F.2d 1285, 1289 (4th Cir. 1987). Here, the parties have stipulated to limit summary judgment arguments to the issues raised in the administrative appeals of OSVA's IADs 1 through 5 and documents produced during the course of this litigation. *See* ECF 28-4 at 1.

### i.   OSVA

Empower broadly asserts that there is no evidence that OSVA "followed any leads to expand its search to include other filing systems and/or record custodians before Empower Oversight administratively appealed the fifth interim agency decision in July 2022." Opp. at 14. Empower further asserts that it would be "nearly impossible for the staff *not* to identify potential leads from references to unproduced records, unsearched filing systems, and potential custodians." *Id.* at 15 (emphasis in original). In support of these assertions, Empower provides two related examples – the second and fifth IADs. *Id.* at 15-16.

As part of the second IAD, Defendant included an email[16] sent by the Executive Writer in OSVA, which included a "link . . . to the 578 pages of releasable records requested . . . ." *Id*. at 15. Similarly, as part of the fifth IAD, Defendant included an email[17] that allegedly references "an *entire folder* of responsive disciplinary records related to high-level VA officials who allegedly accepted prohibited gifts (i.e., free attendance at events) from NASCAR." *Id*. at 16 (emphasis in original). In both instances, the records in question relate to an earlier FOIA request processed by the VA. *Id.* at 15-16. Empower argues that Defendant "should have followed obvious leads from those documents to search for other responsive records and to revise its search parameters." *Id.* at 16.

Additionally, Empower alleges "that the VA did not conduct a search of its VIEWS system until after Empower Oversight had appealed the fifth interim agency decision." *Id*. at 17. Empower argues that "the VA already knew that the VIEWS system included information *potentially responsive* to Empower Oversight's request" and that Plaintiff's appeal of the fifth IAD "should have alerted the agency that it needed to revise its search plan." *Id.* (emphasis added). Finally, Empower challenges the selection of email accounts that were searched throughout the VA's response, arguing that "FOIA Officer Ha has not explained how the self-imposed limitation . . . includes all the mailboxes of employees familiar with and responsible for the VA's responses to Senator Grassley's letter." *Id.*

First, the Court examines Empower's argument that the searches that produced the second and fifth IADs were deficient due to failures by OSVA to follow leads. According to FOIA Officer Ha, records responsive to a previous FOIA request "would have been located through searches in VA records systems" if they were responsive to a subsequent FOIA request. ECF 28 ("Ha Decl.")

---

[16] The email is dated May 18, 2021 (Bates number: 001802-03). Opp. at 15.
[17] The email is dated April 6, 2021 (Bates number: 003427-28). Opp. at 15.

¶ 72. Of the 578 pages linked to the above-referenced email, Empower did in fact receive "more than 200 pages of records related to Thomas Murphy, which were responsive to [i]tem 6 of Plaintiff's request." Reply at 8. Defendant also provided Empower with a link[18] to 578 pages through the VA FOIA Public Access Website with instructions on how to access the documents. ECF 31-2 ("Ha Supp. Decl.") ¶ 6. Notably, Empower did not appeal the scope of Defendant's records search in its administrative appeal of the second IAD. Ha Decl. ¶ 66.

With respect to the first lead identified in the fifth IAD, Empower alleges that the NASCAR records are responsive and should have been produced. Empower also notes that the email from April 6, 2021 related "to the scope of Senator Grassley's Question 4,[19]" which sought records, communications, and memoranda related to the suspensions, or proposed suspensions, of Thomas Murphy. Opp. at 16. Generally, the fifth IAD contained records responsive to items 1-5 of Empower's Request. Ha Decl. ¶ 65. The Court notes that the NASCAR records referenced in the email appear to contain information related to item 6 of Empower's Request, which seeks all documents related to "[t]he alleged proposal to suspend Thomas Murphy for 10 days[.]" *Id.* ¶ 10. However, if any of these records had been responsive to the Request, they would have been identified through the VA's records system. *Id.* ¶ 72. Indeed, they were identified and produced. Defendant produced more than 200 pages of records[20] relevant to item 6 through its search for responsive documents. ECF 31-1 at 1. Defendant supplemented this production by providing Empower a link through the VA FOIA Public Access Website, which includes hundreds of documents concerning Thomas Murphy and NASCAR. Ha Supp. Decl. ¶ 6. The Court takes

---

[18] The link is: https://vapal.efoia-host.com/. Ha Supp. Decl. ¶ 6.
[19] Sen. Grassley's letter from April 2, 2021 contains twelve questions or requests. Question 4 reads as follows: "Please provide all records, communications, and memorandums related to the suspensions, or proposed suspensions, of Tom Murphy, Jamie Manker, and Robert Reynolds." ECF 24-A at 5.
[20] "Records Bates numbered 000108 to 000381 relate to Thomas Murphy and were previously released in FOIA Request 21-08490-F . . . ." ECF 31-1 at 1.

judicial notice of these publicly available records and finds that Empower's challenges to the leads identified in the second and fifth IADs generally concern overlapping records to which it already has full access.

Empower's assertions regarding the alleged failure to follow leads in the VIEWS system and the selection of email boxes similarly fall short. In the first IAD, Defendant informed Empower of the twenty email boxes as well as the search terms that would be applied to the search. Ha Decl. ¶ 38. Contrary to Empower's argument, this decision was adequately explained, as the OSVA FOIA officer was "uniquely well-situated to determine which VA employees' email boxes might contain responsive records." *Id.* ¶ 18. These email boxes were chosen based on Ms. Parise's familiarity with the record and "her personal knowledge of the employees involved in responding to Senator Grassley's letter[.]" *Id.*

Defendant has provided a supplemental declaration identifying thirteen of these Senior Executive Service ("SES")-level VA employees[21] and their respective titles, whose email boxes were searched by OI&T along with seven additional non-SES level employees,[22] whose email boxes were also searched. Ha Supp. Decl. ¶ 3. Nevertheless, the search of these email boxes did produce VIEWS records in the first, second, and fourth IADs. Ha Decl. ¶ 71. One of the search terms was the VIEWS number assigned to Sen. Grassley's letter, which Defendant further explained, was used because "[g]enerally, VA staff communicate about VIEWS cases and tasks

---

[21] The thirteen individuals are identified as: (1) Denis McDonough, VA Secretary; (2) Tanya Bradsher, VA Chief of Staff; (3) Gina Farrisee, VA Deputy Chief of Staff; (4) Carrie McVicker, VA Executive Secretary; (5) Richard Sauber, VA General Counsel; (6) Richard Hipolit, VA Deputy General Counsel, Veterans Programs; (7) Michael Hogan, VA Deputy General Counsel, General Law; (8) Catherine Mitrano, VA Principal Deputy General Counsel; (9) Tahmika Jackson, VA Special Counsel; (10) Hansel Cordeiro, OAWP Acting Executive Director; (11) Brandye Terrell, VBA Chief of Staff; (12) Carrie Johnson-Clark, CSEMO Executive Director; and (13) Kimberly McClain, OCLA Deputy Assistant Secretary. *See* Ha Supp. Decl. ¶ 3.

[22] The seven individuals are identified as: (1) Ruthann Parise, OSVA FOIA/Privacy Officer; (2) Executive Writer; (3) OGC Deputy Chief Counsel, Information and Administrative Law Group; (4) OGC Deputy Chief Counsel, Ethics Specialty Team; (5) Attorney, OGC Ethics Specialty Team; (6) OAWP Division Director for Investigations; and (7) OCLA Supervisor, Congressional Liaison Service. *See* Ha Supp. Decl. ¶ 3.

through email . . . to prepare Congressional correspondence." *Id.* ¶ 21. Notably, Empower did not object to the parameters of these searches. In response to Empower's appeal of the fifth IAD, Defendant produced all VIEWS records in the fifth final agency decision, which included duplicates of documents previously released. *Id.* ¶¶ 70-71.  Accordingly, the Court finds that OSVA's search was "reasonable in light of the totality of the circumstances." *Rein*, 553 F.3d at 364.

### ii.   OIG

The gravamen of Empower's arguments regarding OIG's productions are that OIG improperly narrowed its search to find records responsive to only item 2 of the Request[23] and failed to follow leads that would produce additional information responsive to item 1. Compl. ¶¶ 86-87. As previously explained, OIG did in fact narrow the scope of its search to item 2 specifically because item 1 referenced Sen. Grassley's letter to Secretary McDonough. Mot. for Summ. J. ¶ 19. By statute, OIG and OSVA are independent.[24] The scope of this search was communicated to Empower, as Ms. Gowins-Bellamy, OIG's FOIA officer explains: "[t]he OIG does not respond to Congressional letters addressed to the Secretary; it responds to Congressional letters addressed to the Inspector General." ECF 27-1 ("Gowins-Bellamy Decl.") ¶ 5. Nevertheless, on August 23, 2021, OIG sent an acknowledgement letter to Empower and "explained that [OIG] interpreted only item number 2 from its list of requested records as describing OIG records" and OIG "did not receive a response from Plaintiff objecting to [its] interpretation." *Id*. ¶ 9.

---

[23] Item 2 refers to "[c]ommunications between the VA OIG and Department employees relating to the VA OIG's 'administrative investigation to evaluate the allegations that Ms. Charmain Bogue, Executive Director of VBA's Education Service, may have violated applicable conflict of interest laws or regulations concerning her official duties and her spouse's business interests.'" Gowins-Bellamy Decl. ¶ 8.

[24] *See* The Inspector General Act of 1978, as amended, Pub. L. No. 95-451, § 1, Oct. 12, 1978, 92 Stat. 1101.

Ms. Gowins-Bellamy further explains that "even though [OIG] interpreted item 1 of Plaintiff's request as describing records created and maintained by VA, and not OIG, [her] office determined that these search terms[25] would also produce records related to [i]tem 1 of Plaintiff's request if such records existed." *Id.* ¶ 15 n.2. Lastly, Ms. Gowins-Bellamy acknowledged that there would be an overlap between items 1 and 2 due to the search terms selected and produced sixteen pages of records of communications between OIG employees related to the investigation into Ms. Bogue. *Id.* ¶¶ 22-23. Adequacy is measured by the "reasonableness of the effort in light of the specific request." *Meeropol*, 790 F.2d at 956. OIG's interpretation is reasonable considering the specificity of the request. In light of the specific request, OIG was not required, as Empower argues, to "refine its search to include the first item of Empower Oversight's FOIA request." Opp. at 19.

Empower also challenges the selection of custodians whose email boxes were searched, noting that the five additional OIG employees[26] shown to have communicated about the Bogue investigation should also have been selected. For one, an "agency is entitled to limit its search based on an appropriate internal analysis of the locations where responsive documents are most likely to be located." *Carter, Fullerton & Hayes, LLC v. F.T.C.*, 601 F. Supp. 2d 728, 735 (E.D. Va. 2009). According to OIG's FOIA Officer, Empower "did not identify specific email custodians or search terms in its FOIA request." Gowins-Bellamy Decl. ¶ 13. OIG's affidavit avers that the two individuals selected, VA IG Missal and OIG Congressional Liaison, Catherine Gromek, were those most likely to have communicated with the VA about the investigation. *Id.* OIG explained that the choice of these two individuals was based on the fact that the Request concerned "a high-

---

[25] OIG used the following search terms: "Ms. Charmain Bogue" and/or "Executive Director of VBA's Education Service." *See* Gowins-Bellamy Decl. ¶ 15.

[26] The five other staffers are identified as Roy Fredrikson, David Johnson, Jamie Mitchell, Katherine Smith, and Chris Wilber. Opp. at 19.

level matter involving communication from a Senator and an open, early-stage, investigation into a high-level VA employee." *Id.* Defendant's affidavit is entitled the presumption of good faith. That others were identified as having generally communicated about the matter does not undermine that presumption or the adequacy of the search.

Empower further argues that the OIG did not produce records of communication between OIG and OSVA employees. Notably, relevant communications between the VA and OIG were discovered and produced through OSVA's response - a fact Empower readily acknowledges. Opp. at 20; *see also* ECF 28-3 ("OSVA Vaughn Index").[27] The reason is that item 2 of the Request sought interagency communication between OIG and OSVA. Ms. Gowins-Bellamy consulted with OSVA before OSVA released documents involving OIG personnel and determined that "VA OIG's search plus OSVA's searches were adequate to discover all relevant emails responsive to item 2 of the request." ECF 31-3 ("Gowins-Bellamy Supp. Decl.") ¶ 11. Intuitively, the email boxes of employees on opposite ends need not both be searched to produce duplicate copies of the same emails.

Lastly, Empower argues that the omission of the working files of the open investigation renders the search inadequate. Mot. for Summ. J. at 8. Defendant argues that Empower "did not request a separate search of documents contained in the investigative file" but even if it had done so "that request would have been denied under FOIA exemption 7, 5 U.S.C. § 552(b)(7)." Gowins-Bellamy Decl. ¶ 28. Section 552(b)(7) applies to the dissemination of records or information surrounding criminal investigations and enforcement proceedings. At the time of Empower's request and appeal, "the OIG investigation into Charmain Bogue was open." *Id*. Once the investigation was completed, OIG searched the files and produced "the precise types of responsive,

---

[27] Some of these documents that were discovered through OSVA's response were those with the following Bates numbers: 002129; 003146-50; and 003432-37. OSVA Vaughn Index at 41, 60, 71.

non-exempt records that Empower Oversight identified in its administrative appeal . . . ." Opp. at 21. Empower has not challenged the adequacy of this production. Accordingly, the Court has no further function because Empower "has already received all of the information to which [it] is entitled to under the law[.]" *Isasi v. Off. of Atty. Gen.*, 594 F. Supp. 2d 12, 13 (D.D.C. 2009).

## C. Exemptions 5 and 6

### i. Exemption 5

"Inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency" are exempt from FOIA requests. 5 U.S.C. § 552 (b)(5). Further, this provision "incorporates the discovery privileges recognized in civil litigation, including the deliberative process privilege, without regard to the needs of a particular plaintiff." *Coleman v. U.S. Dep't of Health & Hum. Servs.*, 2022 WL 1837922, at *2 (E.D. Va. Jan. 20, 2022). The deliberative process privilege is limited in two ways.

First, "purely factual material does not fall within the exemption unless it is inextricably intertwined with policymaking processes such that revelation of the factual material would simultaneously expose protected deliberation." *Solers, Inc. v. Internal Revenue Serv.*, 827 F.3d 323, 330 (4th Cir. 2016) (quoting *City of Virginia Beach v. U.S. Dep't of Commerce*, 995 F.2d 1247, 1253 (4th Cir. 1993)). Second, "the validity of the privilege depends . . . upon a balancing of the public interest in nondisclosure with the need for the information as evidence." *Cipollone v. Liggett Grp. Inc.*, 1987 WL 36515, at *2 (4th Cir. Feb. 13, 1987) (internal quotation marks omitted).[28] A defendant asserting privilege bears the "burden of demonstrating its applicability."

---

[28] Regarding balancing, "the common law of discovery [has] developed a number of factors for the court to consider, including: (1) the relevance of the evidence to the lawsuit; (2) the availability of alternative evidence on the same matters; (3) the government's role (if any) in the litigation, and (4) 'the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions.'" *Harrison v. Shanahan*, 2019 WL 2216474, at *4 (E.D. Va. May 22, 2019) (quoting *Cipollone v. Liggett Grp. Inc.*, 1987 WL 36515, at *2 (4th Cir. Feb. 13, 1987).

*NLRB v. Interbake Foods, LLC*, 637 F.3d 492, 501 (4th Cir. 2011). In doing so, a defendant must offer "specific facts" showing the privilege is applicable. *RLI Ins. Co. v. Conseco, Inc.*, 477 F. Supp. 2d 741, 751 (E.D. Va. 2015).

Furthermore, an affidavit claiming an exemption must "(1) describe the withheld documents and the justifications for nondisclosure with reasonably specific detail; (2) demonstrate that the information withheld falls logically within the claimed exemption; (3) remain uncontroverted by either contrary factual evidence in the record or by evidence of agency bad faith." *Virginia-Pilot Media Companies, LLC v. Dep't of Just.*, 147 F. Supp. 3d 437, 444 (E.D. Va. 2015) (quoting *Pully v. I.R.S.*, 939 F. Supp. 429, 433 (E.D. Va. 1996)).

Here, Defendant claims that "all the records in question were created before OSVA responded to Senator Grassley's letter on December 23, 2021, and therefore were predecisional." Mot. for Summ. J. at 23. Empower does not dispute the predecisional nature of the records, but instead argues that Defendant "has failed to carry its burden of demonstrating that factual information cannot be segregated from the responsive records." Opp. at 23. The Court notes that Defendant provides explanations for all the records challenged by Empower, all of which are entitled to the presumption of good faith.[29] Agency declarations, such as those that Defendant has submitted, are afforded a presumption of good faith. *Bowers v. U.S. Dep't of Just.*, 930 F.2d 350, 357 (4th Cir. 1991). Furthermore, "[i]f the government fairly describes the content of the material withheld and adequately states its ground for nondisclosure, and if those grounds are reasonable and consistent with the applicable law, a district court should uphold the government's position. The court is entitled to accept the credibility of the affidavits, so long as it has no reason to question the good faith of the agency." *Spannaus v. U.S. Dep't of Just.*, 813 F.2d 1285, 1289 (4th Cir. 1987).

---

[29] *See*, *e.g.* documents with the following Bates numbers: 000924, 001110-11, and 001143. OSVA Vaughn Index at 6, 13.

Empower argues that the "VA has not satisfied its burden of demonstrating that factual information cannot be segregated from the responsive records that it has redacted under the deliberative process privilege of Exemption 5." Opp. at 23. To bolster its argument, Empower claims that "[m]ost of Senator Grassley's questions require only a factual 'yes' or 'no' response[30] . . ." *Id.* at 24. Empower further argues that "[n]either the Vaughn indices nor any declaration submitted here provides sufficient details to permit the Court to meaningfully assess whether further segregability is possible." Opp. at 26 (internal quotation marks omitted).

Contrary to this assertion, OSVA FOIA Officer's declaration and the accompanying Vaughn index explain in detail the reasons behind each withholding pursuant to Exemption 5 as well as why all segregable information has been released. Notwithstanding, Empower does not afford either the OSVA FOIA Officer's declaration or the Vaughn index the presumption of good faith to which Defendant is entitled. *See James Madison Project v. CIA*, 2009 WL 2777961, at *2 (E.D. Va. Aug. 31, 2009) ("Agency declarations are to be accorded a presumption of good faith.").

FOIA Officer Ha explained that he had "reviewed the records to determine whether any facts contained in those records could be segregated for public disclosure. In this matter, the protected material is so inextricably intertwined with any disclosable information that it cannot be meaningfully segregated for release without destroying the integrity of the document. The release of factual information contained within draft documents would reveal the process by which the agency developed the final document – a process that is itself protected by the deliberative process

---

[30] Some of the questions that Empowers offers to illustrate its assertion are from Sen. Grassley's April 2021 letter to Secretary McDonough: "Question 1: Has Acting Undersecretary Tom Murphy ever been recommended for suspension for accepting gifts as prohibited by law?; Question 2: Had former Deputy Undersecretary Robert Reynolds ever been recommended for suspension for accepting gifts as prohibited by law?; Question 3: Had former Principal Undersecretary Jamie Manker ever been recommended for suspension for accepting gifts as prohibited by law?; Question 6: If the VA is aware that market sensitive information was potentially leaked, has the VA investigated this leak of information?; Question 7: Did the VA Office of General Counsel ever provide a legal opinion with respect to Mrs. Bogue and her involvement with any of her husband's companies?; and Question 10a: If Mrs. Bogue did report her husband on a public financial disclosure form, did she report Mr. Bogue's employer(s)?" Opp. at 24.

privilege." Ha Decl. ¶ 97. For each instance where information was withheld pursuant to Exemption 5, the Officer Ha explains the particular reasons for the withholding in the Vaughn index. *See generally* OSVA Vaughn Index. As he explains in the Vaughn index, "the redacted material reflects . . . preliminary thoughts, opinions, and recommendations, which do not reflect VA's final decision," the disclosure of which "could create undue public confusion regarding the basis for any agency response" and have a "chilling effect on the ability of federal officials to opine or ask questions about agency issues that require full and frank assessment." OSVA Vaughn at 6. These reasons are more than adequate to justify the redactions under Exemption 5.

The deliberative process privilege is intended to encourage "candid discussion within the agency," including ensuring that the agency's position on a matter is not subject to disclosure if it is "merely tentative" and "subject to change." *U.S. Fish & Wildlife Serv. v. Sierra Club*, Inc., 592 U.S. 261, 269 (2021) (internal quotation marks omitted); *Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, 384 F. Supp. 2d 100, 112 (D.D.C. 2005) (internal quotation marks omitted). Moreover, drafts are "by definition, a preliminary version of a piece of writing subject to feedback and change." *U.S. Fish & Wildlife Serv.*, 592 U.S. at 269. Accordingly, the withheld draft responses "allowed for the possibility of postcirculation changes," *Id.*; OSVA Vaughn at 14 (noting that the content of draft responses "was subject to change," and that "[t]he responses were subject to ongoing review and edits and represent continuing deliberations of agency employees; as such, they were not final."). Such additions or deletions are the products of "editorial judgments," the disclosure of which "would stifle the creative thinking and candid exchange of ideas necessary" for the agency to produce its final product. *Dudman Commc'ns Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1569 (D.C. Cir. 1987).

Furthermore, the danger of chilling frank discussion among agency employees does not arise from the disclosure of the facts themselves, but "from disclosure that [the agency] as an institution made changes in a draft at some point[.]" *Id*. Here, as the FOIA officer explained, any factual information in OSVA's draft responses is inextricably intertwined with deliberative material, because Defendant had not decided on its strategy for how to respond to Senator Grassley. Ha Decl. ¶ 87; *see Skull Valley Band of Goshute Indians v. Kempthorne*, 2007 WL 915211, at *14 (D.D.C. Mar. 26, 2007) (explaining that "the drafting process is itself deliberative in nature," and therefore "the disclosure of draft documents could expose to public view the deliberative process of an agency" (internal quotation marks omitted)). Notably, OSVA's eventual response to Sen. Grassley did not follow the template of the draft responses that Empower challenges. OSVA informed Sen. Grassley that it "would not be able to provide non-record responses to inquiries" due to pending investigations. *See* ECF 31-1. Accordingly, OSVA did not respond in a narrative fashion to the specific "factual" questions Senator Grassley asked. *Id*. Thus, the withheld drafts "reflect a preliminary view—not a final decision"—about how to respond to Sen. Grassley's letter. *U.S. Fish & Wildlife Serv*., 592 U.S. at 262. Releasing such draft responses that were never released plainly would discourage candor and have an undesirable chilling effect on agency decision-making. *Id*. at 266; OSVA Vaughn at 6, 14, 18, 37.

Finally, Empower challenges redacted information in the email at OSVA Bates Number 2657. Opp. at 25. That email was written by VA Deputy General Counsel Michael Hogan to a VA employee and two OGC attorneys, "discussing the legal parameters related to" Sen. Grassley's inquiry. OSVA Vaughn at 45-46; *see also* ECF 28-2 at 185-198. As explained in OSVA's Vaughn index, this email is deliberative, as it reflects the agency's decision-making process, and is protected by attorney-client privilege. OSVA Vaughn at 46. Empower does not challenge

Defendant's assertion of attorney-client privilege over this email. Accordingly, the Court upholds Defendant's redactions pursuant to Exemption 5.

### ii.      Exemption 6

Under 5 U.S.C. § 552 (b)(6), agencies are permitted to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552 (b)(6). "The burden of demonstrating that requested information falls under an exemption rests on the government." *Casa De Maryland, Inc.* v. *U.S. Dep't of Homeland Sec.*, 409 F. App'x 697, 699 (4th Cir. 2011) (quoting *City of Virginia Beach, Va v. United States Dep't of Commerce*, 995 F.2d 1247, 1252 (4th Cir 1993). Once an agency demonstrates a legitimate privacy interest, the burden shifts to the requestor to "(1) 'show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake,' and (2) 'show the information is likely to advance that interest.'" *Casa De Maryland*, 409 F. App'x at 700 (4th Cir. 2011) (quoting *National Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004)).

Empower argues that both OSVA and OIG have "failed to carry [their] burden with respect to Exemption 6." Opp. at 29. The Court disagrees. These redactions are entitled the presumption of good faith, and Empower has not identified anything in the record to controvert that presumption. The OSVA FOIA officer's supporting affidavit explains that the names redacted were of "lower-level VA employees" and "non-VA employees" who were uninvolved in the policy making decisions. OSVA Vaughn Index at 69. Higher level employees retain a privacy interest "in other identifying or contact information, such as cell phone numbers or direct email or telephone extensions." *Id.* Likewise, OIG redacted the name and job title of a single "non-Senior Executive administrative employee who did not engage in policymaking . . . ." Gowins-Bellamy Decl. ¶ 25.

24

The Court agrees that these employees have legitimate privacy interests in safeguarding this information "because of the potential for future harassment, annoyance, or embarrassment." *Neely v. FBI*, 208 F.3d 461, 465 (4th Cir. 2000).

These privacy interests must be weighed against the public interest, which "is served to the extent to which disclosure of the information sought would she[d] light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Thompson v. U.S. Just. Dep't*, 2021 WL 6332676, at *12 (E.D. Va. Mar. 29, 2021), *aff'd*, 2022 WL 1797324 (4th Cir. June 2, 2022). Disclosing these names and emails would not provide insight into any undertakings by the government. Rather, the disclosure of these names and emails could allow a "keen observer" to "ascertain the full email addresses" of current VA employees, and potentially send them harassing emails. *Judicial Watch, Inc. v. U.S. Dep't of State*, 2017 WL 456417, at *11 (D.D.C. Feb. 2, 2017). More importantly, as the VA points out, Empower has not identified any public benefit from the disclosure of this information that would outweigh the potential harm.[31] Disclosing this information would be a clearly unwarranted invasion of privacy. Accordingly, the Court upholds Defendant's redactions pursuant to Exemption 6.[32]

---

[31] The Court is cognizant of the fact that Empower generally seeks information regarding allegations of misconduct by officials within the VA and the VA's response to this misconduct. There is an important public interest in knowing whether the VA has adequately dealt with and investigated this misconduct. However, the Court is satisfied that this public interest has been adequately served by public information already available regarding those allegations. *See U.S. Dep't of State v. Ray*, 502 U.S. 164, 178 (1991) (finding the public interest in disclosure to have been adequately served by redacted documents that had already been released); *Off. of Cap. Collateral Couns., N. Region of Fla. ex rel. Mordenti v. Dep't of Just.*, 331 F.3d 799, 803 (11th Cir. 2003) (finding that there is substantial public information available about the AUSA's misconduct and that therefore any "public interest in knowing how DOJ responded to [the AUSA's] misconduct can be satisfied by this other public information").

[32] On January 27, 2023, Plaintiff filed a Notice containing two documents, attached as exhibits, for the Court's review. ECF 32. In its Notice, Plaintiff seeks to provide these additional documents to supports its arguments "raised in opposition to defendant's motion for summary judgment" that Defendant "failed to conduct searches reasonably calculated to locate responsive records in violation of 5 U.S.C. § 552(a)(6), and . . . improperly withheld information under 5 U.S.C. § 552(b)(5)." Given that Local Rule 7(F) provides that "[u]nless otherwise ordered by the Court, the Local Rules prohibit a party from filing a sur-reply without first obtaining leave of Court." *Hooker v. Sirius XM Radio, Inc.*, 2013 WL 12149171, at *1 (E.D. Va. May 8, 2013) (citing Local Civil Rule 7(F)(1)). Plaintiff did not obtain leave of Court to file its surreply. Accordingly, the Court will not consider it.

**V.     CONCLUSION**

For the foregoing reasons, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**.

The Clerk is directed to enter judgment in favor of Defendant pursuant to Rule 58 and to close this civil action.

It is **SO ORDERED**.

/s/
_____
Hon. Michael S. Nachmanoff
United States District Judge

July 1, 2024
Alexandria, Virginia

26